REQUESTED BY: Senator John E. Nelson
Nebraska Legislature
You have requested our opinion regarding the constitutionality of LB 198 following the adoption of AM 705. You have specifically asked about proposed limitations on the number of certain political messages which may be sent by prerecorded telephone call or with the use of automatic dialing-announcing devices. The proposed legislation would limit such messages to two messages to a residential telephone line in a calendar day. You have asked whether such restrictions rise to the level of violating constitutional rights and it is our understanding your concern lies with the first amendment.
LB 198, with the amendments adopted to date, would amend Neb. Rev. Stat. § 49-1474.02 of the Nebraska Political Accountability and Disclosure Act and Neb. Rev. Stat. § 86-236 and the Automatic Dialing-Announcing Devices Act. Neb. Rev. Stat. § 49-1474.02(1) currently requires that a person who makes an expenditure reportable under the Nebraska Political Accountability and Disclosure Act to disseminate by telecommunication prerecorded messages relating to candidates or ballot questions shall include the name of the person making the expenditure. LB 198 would also require that such messages only be disseminated between the hours of 8:00 a.m. and 9:00 p.m. and that no more than two such messages be disseminated to any one household in a calendar day.
The Automatic Dialing-Announcing Devices Act currently restricts telephone solicitations made for commercial purposes using automatic dialing-announcing devices and limits such telephone solicitations to the hours of 8:00 a.m. to 9:00 p.m. LB 198 would add a new section to the Act to restrict persons using automatic dialing-announcing devices for messages of a political nature, would limit those political messages to the hours of 8:00 a.m. to 9:00 p.m. and would also require that no more than two such messages be transmitted to any one residential telephone line per calendar day.
LB 198 would affect political speech interests which are protected by the first amendment. "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression. . . ." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) (citation omitted). However, the prohibitions of the first amendment are not absolute. Even protected speech may be subject to time, place and manner restrictions if those restrictions are sufficiently justified and narrowly enough drawn. Ward v. Rock Against Racism, 491 U.S. 781 (1989).
While we are not aware of the exact governmental interests that led to LB 198, one justification that might be given for the proposed limitations is the protection of residential privacy. The state may wish to protect citizens from unwelcome speech that invades the privacy of their home. Rowan v. United States Post Office Dept., 397 U.S. 728
(1970).
In reviewing restrictions on protected speech, a court would first determine whether the statute in question is content-neutral and regulates the protected speech without regard to content, or whether the statute in question is content-based in that it regulates the content of the protected speech. Whitton v. City of Gladstone, Mo., 54 F.3d 1400
(8th Cir. 1995). If a court finds that LB 198 constitutes content-neutral regulation of speech, the bill would be subjected to intermediate scrutiny and would be sustainable if the restrictions were found to serve substantial governmental interests and to be narrowly tailored. However, if a court determines that LB 198 constitutes content-based regulation of political speech, its restrictions would then be subjected to strict scrutiny and would be sustained only if the state's interests in enacting the bill were compelling and there was no less restrictive means available to achieve the state's interests. McIntyre, 514 U.S. at 347.
Courts of several jurisdictions have examined state statutes which regulate the use of telephone automatic dialing and announcing devices. The Eighth Circuit Court of Appeals considered a challenge to such statutes in Van Bergen v. Minnesota, 59 F.3d 1541 (8th Cir. 1995). The Minnesota statute concerning the use of automatic dialing-announcing devices (ADADs) was amended so as to apply to any call, regardless of its content. The Minnesota statute prohibited the use of ADADs unless the subscriber had consented to receive the message or the message was immediately preceded by a live operator who obtained the subscriber's consent. The ADADs could only be used between 9:00 a.m. and 9:00 p.m. The plaintiff, a candidate for governor who planned to use ADAD calls, claimed the statutes violated the freedom of speech provisions of the first amendment. The court of appeals first inquired whether the statute was content-neutral and found that it was because the statute applied to all callers and to all messages regardless of content. Three statutory exceptions were based on the caller's existing relationship with the subscriber (which implied the recipient's consent to the call) and not on the content of the call. The court then reviewed the Minnesota statute under an intermediate level of scrutiny. The court found a significant governmental interest in protecting residential privacy, that the statute was narrowly tailored to reach those interests as the prior consent and live operator options both allow the continued use of ADADs, and that there were other methods for the plaintiff to communicate such as live telephone calls, bulk mailings, posters, and signs. Id. at 1555. The court, therefore, held that the Minnesota statute was constitutional.
A similar analysis was employed by the Ninth Circuit Court of Appeals in Bland v. Fessler, 88 F. 3rd 729 (9th Cir. 1996). The Ninth Circuit Court of Appeals considered two California statutes which regulate ADADs in a challenge brought by an individual who used ADADs to advertise his carpet cleaning services. The California statutes were also found to be constitutional. In its decision, the court noted that the utility statute at issue applied to all ADAD users with exceptions only for parties with existing relationships and for certain emergency situations.
LB 198, however, may be more difficult to defend because, in contrast to the Minnesota and California statutes discussed above, LB 198 pertains only to political messages. Therefore, a court would be likely to find that the proposed Nebraska legislation is content-based and subject to a higher level of scrutiny. "[A] restriction solely for political speech is content-based." Burson v. Freeman, 504 U.S. 191
(1992).[1]
Similarly, in ruling on a motion to dismiss, a federal court held that a Washington statute restricting the use of ADADs only with regard to commercial solicitation was content-based because it differentiated between commercial and non-commercial (charitable or political) calls. Spafford v. Echostar Communications Corp., 448 F. Supp. 2d 1220 (W.D. Wash. 2006).[2]
Because LB 198 imposes restrictions only on political calls, it is likely to be considered content-based and would likely be subjected to a higher level of scrutiny. While several jurisdictions have held that residential privacy is a significant governmental interest, it is not clear whether it would be determined to be a compelling state interest or whether LB 198 would be found to be sufficiently narrowly drawn to achieve that end. Therefore, LB 198 could be found to violate the first amendment.
Sincerely,
JON BRUNING
Attorney General
Lynn A. Melson
Assistant Attorney General
Approved:
___________________________
Attorney General
[1] In Burson, the Court held that a Tennessee statute restricting the solicitation of votes and the display of campaign materials near the entrance of a polling place was content-based legislation, but upheld the statute after finding there was a compelling state interest in preventing voter intimidation and voter fraud.
[2] The Spafford case is still pending. The court did find that the statutory restrictions on commercial speech, which is entitled to less protection than political speech, bore a reasonable relationship to the state's interest in protecting privacy.